Filed 9/14/15

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059735 |
| v. | (Super.Ct.No. FBA1300085) |
| DARNELL JAMES BROWN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Rodney A. Cortez, Judge.  Affirmed as modified and remanded with directions.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Scott C. Taylor and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

---

\*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III, IV and V.

1

Four male gang members lured a 15-year-old female victim to the bedroom of a house, got her falling-down drunk, then had sex with her against her will. She awoke to find herself on a mattress in a nearby vacant apartment. DNA recovered from her vagina was identified as that of defendant Darnell James Brown.

The gang members had a female accomplice. She testified that defendant was *not* one of the four gang members who participated in the initial rapes. However, she also testified that one "Big Dee" took the victim away from the house. A gang expert testified that defendant was a member of the same gang, with the moniker "Big Dee." Thus, the prosecution argued to the trial court and to the jury that defendant must have taken the victim over to the vacant apartment and raped her there.

After a jury trial, defendant was found guilty of rape in concert of a minor 14 or older (Pen. Code, § 264.1, subd. (b)(2)), forcible rape (*id*., § 261, subd. (a)(2)), rape of an intoxicated person (*id*., § 261, subd. (a)(3)), and rape of an unconscious person (*id*., § 261, subd. (a)(4)). He was sentenced to a total of 29 years in prison, along with the usual fines.

Defendant raises a host of appellate contentions, including that there was insufficient evidence of force to support the convictions for rape in concert and forcible rape. Enfolded within this contention is a subsidiary question: Are we limited to reviewing the sufficiency of the evidence to support the particular factual scenario that the prosecution argued below? While there was sufficient evidence to support the prosecution's theory that defendant raped the victim in the vacant apartment, there was

2

insufficient evidence of force in that scenario. On the other hand, despite the accomplice's denial, there was also sufficient evidence that defendant was one of the men who raped the victim in the bedroom; in that scenario, there was sufficient evidence that defendant's rape was forcible.

The Supreme Court has made it clear that ordinarily, we can uphold a conviction on any factual theory that is supported by the evidence. We will conclude that this case, however, comes under an exception to that rule: When the prosecution has elected to proceed on one factual theory, and when that election has obviated the need for a unanimity instruction, we are bound by the prosecution's election. Here, because the prosecution's elected factual theory was not supported by substantial evidence, we must reverse the rape in concert and forcible rape convictions and modify the judgment accordingly.

I

FACTUAL BACKGROUND

As of February 2007, Jane Doe[1] was 15 years old. She lived in Barstow with her mother, her 12-year-old sister, and her own 1-year-old daughter.

One of Doe's friends was T.S., who was also 15. At trial, T.S. testified pursuant to a grant of use immunity.

---

[1] The trial court ordered that the victim be referred to by this fictitious name. (Pen. Code, § 293.5.)

On the night of February 2-3, 2007, around 10:30 p.m., T.S. showed up at Doe's house and asked Doe to go to the store with her. Doe's mother was out; Doe did not want to leave her baby alone with her little sister for too long, so she said, "[A]s long as it's only going to be for a few minutes." T.S. replied, "You'd better come with us or I'm going to kick your ass."

They went out to the car that T.S. had come in. The driver was an African-American man. At trial, T.S. identified him as Lyndale Roberts. She testified that Roberts was a member of a gang called Dangerous Crew or DC Boys (DC).

The driver drove the girls to a grocery store, where T.S. shoplifted one or two bottles of gin. He then drove them to T.S.'s house, also in Barstow. When they got there, Doe said, "I don't have time. I have to get home." T.S. became "almost threatening." She said, "You have to come in. You have to meet somebody." She took Doe by the hand and led her into her bedroom. The driver followed them.

Three African-American men were in the bedroom, "waiting."[2] At trial, T.S. identified them as her boyfriend George Cooper, Courtney Walker, and Jermaine Riley, all members of DC. She explained that Roberts and the other three men had asked her if she had any female friends who would like to "hang out" with them.

_____

**2** T.S. testified that there were three men already in the bedroom (i.e., not counting the driver). Likewise, Doe told police that there were three. At trial, however, Doe insisted that there were four.

4

T.S. mixed the gin into a bottle of juice. She asked Doe to have a drink with her. When Doe said again that she did not have time, T.S. threatened to harm her unless she drank. Doe drank from the bottle.

Doe began to feel "really dizzy." After a couple of minutes, she "couldn't really move." The men took her clothes off. They made her get onto her hands and knees on a bed. Each of the men then put his penis in her vagina and put his penis in her mouth. "[S]he told them that she didn't want to do this. And she would try to pull away, but then they would pull her back." According to Doe, T.S. threatened to "beat her ass" if she did not cooperate.[3]

Meanwhile, Doe was going in and out of consciousness. She "kept falling over with [her] face in the bed." The men had to hold her up by the hips and shoulders. When they stopped sexually assaulting her, she fell to the floor, crawled to the bathroom, and threw up.

Doe gave four different versions of what happened next.

At trial, Doe testified that the next thing she remembered was waking up all alone on a mattress in a vacant apartment.

Doe also testified, however, that she did remember the driver carrying her, dropping her onto the mattress, and lying down next to her. She added:

---

[3] According to T.S., Doe was drunk but otherwise appeared to be a willing participant.

Also according to T.S., her boyfriend Cooper did not participate in the sex acts.

5

"Q  Did he try and have sex with you in that other apartment?

"A  Yes, sir.

"Q  Did he have sex with you?

"A  I don't know.  After him pulling on me, I passed out again."

Doe had told one police officer that after the rapes, while she was still at T.S.'s house, the driver "attempted to have sex with her," but she pushed him away.

She had told a different police officer that, when she woke up at the vacant apartment, the driver was already on the mattress with her.  He tried to penetrate her, but she pushed him away.  She then passed out again.

T.S. testified to yet another version.  According to her, after the rapes, three more men came to her house.  She knew them as "Big Dee," Jonathan, and "Little Ray."  Big Dee and Jonathan were brothers.  By the time of trial, T.S. claimed, she did not remember what Big Dee looked like.[4]  "They spoke outside with [Cooper] and [Walker]."  Then they woke up Doe (who was still "in and out") and took her to the vacant apartment.

At any rate, Doe awoke in the vacant apartment, she ran to a nearby house, knocked on the door, and asked for help.  A woman inside called 911.

Doe could not identify defendant.  T.S. likewise testified that she did not recognize defendant.

---

[4]  Defendant states, "[T.S.] knew Big Dee from high school; she described him as an 18 or 19[-]year-old teenager, who was Jonathan's little brother."  The cited portion of the record does not support any of this.  T.S. specifically did not remember whether Big Dee was older or younger than Jonathan.

Defendant's DNA was found in Doe's vagina and rectum.[5]

The police interviewed T.S. several times. She told a series of changing stories, generally to the effect that she did not see any sexual acts. After defendant's DNA had been identified, however, she gave an account that was consistent with her testimony at trial. She explained that she had lied because she was afraid of her boyfriend Cooper.

According to a gang expert, defendant was an affiliate of DC, with the moniker "Big Dee."

Defendant testified on his own behalf. He denied having the moniker "Big Dee." He did not have a brother named Jonathan. He testified that DC was a rap group, not a gang. He denied being a member of DC or a member of any gang.

Defendant admitted knowing Roberts; Roberts's sister was the mother of defendant's children. He also admitted knowing George Cooper, Courtney Walker, and Jermaine Riley.

---

[5] Defendant asserts that the DNA evidence "revealed that neither Doe nor [T.S.] w[as] telling the entire truth." Not so. It is true that condoms found in the bedroom had DNA from females other than Doe. Defendant suggests that this is inconsistent with Doe and T.S.'s testimony that they were the only females present. However, none of the DNA from the condoms could be identified as Doe's, and there was no evidence as to when the condoms were used.

The only foreign DNA found in Doe's vagina came from defendant. Most of the foreign DNA found in her rectum came from defendant; however, there was a second trace donor, probably male.

Defendant testified that on the night of February 2-3, 2007, he went to T.S.'s house looking for Roberts. He found four men and four women dancing and drinking. While there, he had consensual sex with Doe at her request.

Doe told him she was 19. She also said she was high on alcohol and Ecstasy and she was afraid that her mother would be angry with her because she was "too fucked up to watch her child."

II

THE SUFFICIENCY OF THE EVIDENCE OF FORCE

FOR PURPOSES OF RAPE IN CONCERT AND FORCIBLE RAPE

Defendant contends that there was insufficient evidence of force to support his convictions for rape in concert and for forcible rape.

"'"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.]' [Citation.]" (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1104.)

8

Rape in concert requires that the rape be committed "by force or violence . . . ." (Pen. Code, § 264.1, subd. (a).) Similarly, forcible rape requires that the rape be "accomplished . . . by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . ." (Pen. Code, § 261, subd. (a)(2).)

"[T]he Legislature did not intend the term 'force,' as used in the rape statute, to be given any specialized legal definition. [Citation.]" (*People v. Griffin* (2004) 33 Cal.4th 1015, 1023.) "'[I]n order to establish force within the meaning of section 261, [former] subdivision (2), the prosecution need only show the defendant used physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the [victim].' [Citation.]" (*Id.* at pp. 1023-1024.)

Here, there was substantial evidence that defendant was one of the men who raped Doe in the bedroom. The DNA evidence proved that he did have sexual intercourse with her. The jury could infer that this must have occurred in the bedroom; Doe testified that, in the vacant apartment, a man tried to have sex with her, but she pushed him away. Moreover, Doe testified that the man who tried to have sex with her in the vacant apartment was the driver; thus, even assuming he did have sex with her in the vacant apartment, he was also one of the men who had sex with her in the bedroom.

Admittedly, T.S. did not identify defendant as one of the four men in the bedroom. The jury, however, could have concluded that she was lying to protect him (much as she had lied and was inferably still lying to protect her boyfriend). Alternatively, it could

9

have concluded that Doe was telling the truth when she testified that there were five men in the bedroom, and that defendant must have been the fifth man.

In addition, there was sufficient evidence of force in connection with the rapes in the bedroom. The men "forced [Doe] to get onto [her] hands and knees," then held her in that position. When she tried to pull away, they would pull her back.

By contrast, there was insufficient evidence of force or fear in connection with a rape (if any) in the vacant apartment. According to Doe, a man there attempted to penetrate her; she pushed him away, then she passed out. If he accomplished a sex act at all, it was after she passed out. Because she was unconscious, there was no need to use force or fear to overcome her will. Doe could not testify that that man used force, and there was no other evidence of force, such as injuries or the testimony of another eyewitness. In general, the force inherent in the act of penetration is not sufficient by itself to prove forcible rape. (*In re Jose P.* (2005) 131 Cal.App.4th 110, 117-118.)

As defendant points out, in closing argument, the prosecutor took the position that defendant was "Big Dee," who arrived after the rapes in the bedroom were complete, and that he took the victim to the vacant apartment and raped her there.[6] The People now claim, however, that that argument was not binding on the jury.

---

[6] We do not know whether the prosecutor took the same position in opening statement, as the parties have not asked to have the opening statement transcribed. (See Cal. Rules of Court, rule 8.320(c)(3) [opening statement is not part of normal record in criminal appeal]; 8.324(b)(2)(B) [either side may apply to have opening statement included in record].)

10

Ordinarily, for purposes of substantial evidence review, "the prosecutor's argument is not evidence and the theories suggested are not the exclusive theories that may be considered by the jury." (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.)

We believe there has to be an exception, however, when the constitutional right to a unanimous jury is implicated. To protect this right, "if one criminal act is charged, but the evidence tends to show the commission of more than one such act, '*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act.' [Citations.]" (*People v. Napoles* (2002) 104 Cal.App.4th 108, 114.)

The prosecution can make an election by "tying each specific count to specific criminal acts elicited from the victims' testimony" — typically in opening statement and/or closing argument. (*People v. Diaz* (1987) 195 Cal.App.3d 1375, 1382; e.g., *People v. Jantz* (2006) 137 Cal.App.4th 1283, 1292; *People v. Mayer* (2003) 108 Cal.App.4th 403, 418-419; *People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1455; cf. *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1535-1536 [prosecutor's closing argument did not constitute an election; while it did place more emphasis on one event than others, it did not adequately inform jurors that prosecution had elected to seek conviction based solely on that event].) Such an election removes the need for a unanimity instruction. (*People v. Mahoney* (2013) 220 Cal.App.4th 781, 796 [Fourth Dist., Div. Two].)

11

Under these principles, there is an implicit presumption that the jury will rely on the prosecution's election and, indeed, is bound by it. This does not violate the rule that the attorneys' remarks are not evidence. (See CALCRIM No. 222.) The evidence still comes solely from the witnesses. Nor does it violate the rule that the jury must follow the law as given in the jury instructions and must disregard the attorneys' remarks to the extent that they conflict with the jury instructions. (See CALCRIM No. 200.) There is no such conflict. The prosecutor is merely doing his or her job — urging the jurors to apply the law to the facts in a specific way so as to come to a specific verdict.

We therefore conclude that, when the prosecution has made an election, under circumstances where a unanimity instruction would otherwise have been required, then we, too, are bound by that election. Thus, if the defendant raises a substantial evidence challenge, our review is limited to whether there is sufficient evidence to support a conviction based exclusively on the act elected by the prosecution. (But see *People v. Leonard* (2014) 228 Cal.App.4th 465, 487 [dictum].) Otherwise, we may only be finding sufficient evidence to support a nonunanimous verdict.

In this case, some jurors could have found that defendant committed rape in the bedroom, while others could have found that he committed rape in the vacant apartment. The trial court was not asked to give and did not give a unanimity instruction. In closing argument, the prosecutor elected to rely solely on a rape in the vacant apartment; thus, the failure to give a unanimity instruction was not error (and defendant, quite appropriately, does not contend that it was). As a result of that election, however, in reviewing the

sufficiency of the evidence of force, we are limited to considering a rape in the vacant apartment.

We therefore conclude that there was insufficient evidence of force for purposes of rape in concert and insufficient evidence of force or fear for purposes of forcible rape. Thus, we must reverse defendant's convictions on these two counts.

We also note that a retrial on these counts is barred. (See generally *Burks v. United States* (1978) 437 U.S. 1, 16-18.) This is true even though there was sufficient evidence of force under an alternative factual scenario. "*Burks* was based on the view that an appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal, rather than submitting the case to the jury. [Citation.] Because the Double Jeopardy Clause affords the defendant who obtains a judgment of acquittal at the trial level absolute immunity from further prosecution for the same offense, it ought to do the same for the defendant who obtains an appellate determination that the trial court *should* have entered a judgment of acquittal. [Citation.]" (*Lockhart v. Nelson* (1988) 488 U.S. 33, 39.)

Here, in light of the prosecution's election, defendant was entitled to a judgment of acquittal. In fact, defense counsel did bring a motion for acquittal (Pen. Code, § 1118.1), based (at least in part) on the insufficiency of the evidence of force to support the rape in concert and forcible rape counts. In arguing that motion, the prosecution articulated the same election that it made later in closing. For the reasons already stated, that motion

13

should have been granted.  Accordingly, a retrial — whether based on a forcible rape in the bedroom or a forcible rape in the vacant apartment — is barred.

III

MULTIPLE CONVICTIONS OF RAPE

BASED ON A SINGLE ACT OF SEXUAL INTERCOURSE

Defendant contends that he could not be convicted of multiple counts of rape based on a single act of sexual intercourse.  In part II, *ante*, we reversed defendant's convictions of rape in concert and forcible rape on other grounds.  Nevertheless, we must consider this contention with respect to his convictions for both rape of an intoxicated person and rape of an unconscious person.

Defendant relies on *People v. Craig* (1941) 17 Cal.2d 453, which held that a defendant could not be convicted of both forcible rape and statutory rape based on a single act of sexual intercourse.  (*Id*. at pp. 455-459.)  It explained:  "Under [Penal Code section 261],[7] but one punishable offense of rape results from a single act of intercourse,

---

7    Former Penal Code section 261, as it stood when *Craig* was decided, provided:

"Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either of the following circumstances:

"1.  Where the female is under the age of eighteen years;

"2.  Where she is incapable, through lunacy or other unsoundness of mind, whether temporary or permanent, of giving legal consent;

"3.  Where she resists, but her resistance is overcome by force or violence;

*[footnote continued on next page]*

14

although that act may be accomplished under more than one of the conditions or circumstances specified in the . . . subdivisions [of Penal Code section 261]. These subdivisions merely define the circumstances under which an act of intercourse may be deemed an act of rape; they are not to be construed as creating several offenses of rape based upon that single act. This conclusion finds support in section 263 of the Penal Code which provides that 'The essential guilt of rape consists in the outrage to the person and feelings of the female.' The victim was not doubly outraged, once because she was forcibly attacked and once because she was under 18 years of age. There was but a single outrage and offense. [Citations.]" (*Id*. at p. 455.)

The People, on the other hand, rely on *People v. Gonzalez* (2014) 60 Cal.4th 533, 536. *Gonzalez* recently held that a defendant *could* be convicted of both oral copulation of an unconscious person and oral copulation of an intoxicated person based on a single act of oral copulation. (*Id*. at pp. 536-540.)

---

*[footnote continued from previous page]*
"4. Where she is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution, or by any intoxicating narcotic, or anaesthetic[] substance, administered by or with the privity of the accused;

"5. Where she is at the time unconscious of the nature of the act, and this is known to the accused;

"6. Where she submits under the belief that the person committing the act is her husband, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce such belief." (Stats. 1913, ch. 122, § 1, p. 212.)

The court distinguished *Craig* as follows:  "*Craig* did not hold that a single Penal Code section could never comprise multiple offenses; it simply concluded, based on the wording and structure of the statute, that former section 261 set forth only one offense that could be committed under several different circumstances, as described in its several subdivisions.  This conclusion flowed naturally from the wording and structure of former section 261. . . .

"Here, the information charged defendant with violation of section 288a, subdivision (f) in count 1 and of section 288a, subdivision (i) in count 2.[8]  These

---

**8**      Penal Code section 288a, as relevant here, provides:

"(a)  Oral copulation is the act of copulating the mouth of one person with the sexual organ or anus of another person.

"(b)(1)  . . . [A]ny person who participates in an act of oral copulation with another person who is under 18 years of age shall be punished by imprisonment in the state prison, or in a county jail for a period of not more than one year.  [¶]  . . .  [¶]  . . .

"[(c)](2)(A)  Any person who commits an act of oral copulation when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years.  [¶]  . . .  [¶]  . . .

"(f)  Any person who commits an act of oral copulation, and the victim is at the time unconscious of the nature of the act and this is known to the person committing the act, shall be punished by imprisonment in the state prison for a period of three, six, or eight years. . . .  [¶]  . . .

"(g)  . . .  [A]ny person who commits an act of oral copulation, and the victim is at the time incapable, because of a mental disorder or developmental or physical disability, of giving legal consent, and this is known or reasonably should be known to the person committing the act, shall be punished by imprisonment in the state prison, for three, six, or eight years. . . .  [¶]  . . .

*[footnote continued on next page]*

16

offenses differ in their necessary elements — an act of oral copulation may be committed with a person who is unconscious but not intoxicated, and also with a person who is intoxicated but not unconscious — and neither offense is included within the other. [Citation.]

"Section 288a is textually and structurally different from former section 261. Subdivision (a) of section 288a defines what conduct constitutes the act of oral copulation. Thereafter, subdivisions (b) through (k) define various ways the act may be criminal. Each subdivision sets forth all the elements of a crime, and each prescribes a specific punishment. Not all of these punishments are the same. That each subdivision of section 288a was drafted to be self-contained supports the view that each describes an independent offense . . . ." (*People v. Gonzalez*, *supra*, 60 Cal.4th at p. 539, fn. omitted.)

The court concluded: "Given these differences between section 288a and former section 261, and in view of the legislative recasting, subsequent to *Craig*, of former

---

*[footnote continued from previous page]*

"(i) Any person who commits an act of oral copulation, where the victim is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused, shall be punished by imprisonment in the state prison for a period of three, six, or eight years.

"(j) Any person who commits an act of oral copulation, where the victim submits under the belief that the person committing the act is someone known to the victim other than the accused, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce the belief, shall be punished by imprisonment in the state prison for a period of three, six, or eight years."

17

section 261 into separate statutes prohibiting rape and unlawful intercourse with a minor [citations], we need not address the People's remaining criticisms of *Craig* . . . ." (*People v. Gonzalez*, *supra*, 60 Cal.4th at p. 540.)

Because *Gonzalez* distinguished *Craig* rather than overruling it, we remain bound by *Craig* in cases to which it applies. "Decisions of the Supreme Court that have never been reversed or modified are binding [citation] . . . ." (*Nix v. Preformed Line Products Co.* (1985) 170 Cal.App.3d 975, 981.)

This case involves the same statute as did *Craig* — Penal Code section 261. Moreover, the structure of Penal Code section 261 remains largely the same (except with regard to statutory rape, which is not involved here). Thus, it still defines rape as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the [specified] circumstances . . . ." (Pen. Code, § 261, subd. (a).) The penalty for rape, regardless of the applicable subdivision, is the same (Pen. Code, § 264, subd. (a)), except that now there are some age-based enhancements for forcible rape (Pen. Code, § 264, subd. (c)). And finally, Penal Code section 263 still provides that "[t]he essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape."

In sum, the same differences that *Gonzalez* noted as between Penal Code section 288a and *former* Penal Code section 261 also exist as between Penal Code section 288a and *current* Penal Code section 261. We therefore conclude that *Craig* remains binding on these facts, and hence that defendant cannot be convicted under multiple subdivisions of Penal Code section 261.

18

According to *Craig*, the appropriate appellate remedy is to modify the judgment so that defendant stands convicted of a single count of rape in violation of Penal Code section 261, subdivisions (a)(3) and (a)(4). (*People v. Craig*, *supra*, 17 Cal.2d at pp. 458-459.) We will do so in our disposition.

IV

THE TRIAL COURT'S FINDINGS OF FACT AT SENTENCING

Defendant contends that the trial court erred by sentencing him on the theory that he participated in the rapes in the bedroom. To the extent that defense counsel forfeited this contention by failing to raise it below, defendant claims ineffective assistance of counsel.

A. *Additional Factual and Procedural Background.*

The probation report stated that defendant was one of the "suspects" who both raped and orally copulated Doe in the bedroom. It added that the same "suspects" supposedly both raped and orally copulated Doe at the vacant apartment.

At sentencing, the trial court stated, "According to the victim's testimony and corroborating evidence, the defendant and three other individuals took turns forcibly raping the victim . . . ." It added, "[A] witness to the incident testified at trial that the defendant and others switched positions at least three times and that this sexual assault lasted from 30 to 45 minutes."

It found that "defendant had ample opportunities during this incident . . . to stop, reflect, and cease in his participation as he was sharing in this disgusting, forcible

19

behavior with three other individuals. . . . [¶] Defendant showed [the victim] no mercy or concern or compassion."

It stated that it was "show[ing] the defendant justice for these horrible crimes" by imposing fully consecutive terms pursuant to Penal Code section 667.6.

It found three aggravating circumstances — cruelty, viciousness, or callousness; a particularly vulnerable victim; and planning, sophistication, or professionalism (Cal. Rules of Court, rule 4.421(1), (3), (8)) — and no mitigating circumstances.

On the rape in concert charge (count 4), the forcible rape charge (count 1), and the rape of an intoxicated person charge (count 6), it imposed the upper terms. On the rape of an unconscious person charge (count 7), it imposed one-third the midterm, to be served consecutively.

Defense counsel did not raise defendant's present contention below.

B.  *Discussion.*

Defendant argues that there was insufficient evidence that he raped Doe in the bedroom. He also points out (again; see part II, *ante)* that the prosecution took the position that he was not one of the four men who raped Doe in the bedroom; rather, he raped her in the vacant apartment. He concludes that the trial court erred by sentencing him based on its mistaken belief that he participated in the rapes in the bedroom.

We have already held that defendant's convictions of rape in concert and forcible rape must be reversed. (See part II, *ante*.) We have further held that he can be convicted and sentenced on only one count of rape. (See part III, *ante*.) Accordingly, to the extent

20

that the trial court erred in imposing full consecutive sentences, the error is moot. Likewise, to the extent that it erred by imposing the upper term for either rape in concert or forcible rape, the error is moot.

The only issue that even conceivably remains is whether the trial court erred by imposing the upper term for rape of an intoxicated person. On this record, however, we see no reasonable likelihood that, even if it had relied exclusively on a rape in the vacant apartment, it would have imposed the midterm or the lower term. It most likely would still have found at least two aggravating circumstances — namely, cruelty, viciousness, or callousness and a particularly vulnerable victim. Even assuming defendant simply stumbled onto the scene after the initial rapes were completed, he still took advantage of the victim's intoxicated and violated state. Moreover, it would still have found no mitigating circumstances. We are convinced that it would still have imposed the upper term.

V

ADDITIONAL MOOT CONTENTIONS

In addition to the contentions discussed above, defendant also contends that:

1. There was insufficient evidence to satisfy the "in concert" element of rape in concert.

2. The jury instructions on the "in concert" element of rape in concert were erroneous.

21

3. Defendant could not be convicted of both rape in concert and forcible rape because the latter is a necessarily included offense of the former.

4. The trial court erred by imposing full consecutive sentences pursuant to Penal Code section 667.6.

5. The sentence for rape in concert violated the ex post facto clause.

6. The abstract of judgment does not correctly reflect the sentences for rape in concert and forcible rape.

We are reversing defendant's conviction of rape in concert and forcible rape on other grounds. Moreover, we are holding that a retrial on these counts is barred. (See part II, *ante*.) In addition, we are holding that defendant can be convicted and sentenced on only one count of rape, namely rape of both an intoxicated and an unconscious person. (See part III, *ante*.) In light of this outcome, all of these other contentions are moot.

VI

DISPOSITION

The judgment is modified as follows: (1) The convictions for rape in concert (count 4) and forcible rape (count 1) are stricken. (2) The convictions for rape of an intoxicated person (count 6) and rape of an unconscious person (count 7) are merged into a conviction on a single count of rape of an intoxicated and unconscious person; the sentence on this count (and thus the total sentence) shall be that imposed by the trial court for rape of an intoxicated person, namely eight years.

22

The clerk of the superior court is directed to prepare an amended sentencing minute order and an amended and corrected abstract of judgment and to forward a certified copy of the amended and corrected abstract to the Department of Corrections and Rehabilitation.  (Pen. Code, §§ 1213, subd. (a), 1216.)

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ

P. J.

We concur:

MILLER

J.

CODRINGTON

J.