Filed 4/8/21  P. v. Saran CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058087 |
| v. | |
| CARLOS HERNANDEZ SARAN, | (Super. Ct. No. 16CF2432) |
| Defendant and Appellant. | O P I N I O N |
| In re CARLOS HERNANDEZ SARAN | G058920 |
| on Habeas Corpus. | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed in part, reversed in part.

Original proceedings; petition for a writ of habeas corpus after judgment of the Superior Court of Orange County.  Petition denied.

David W. Beaudreau, under appointment by the Court of Appeal, for Defendant, Appellant and Petitioner.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers, and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　　\*　　　　\*

A jury convicted Carlos Hernandez Saran of six counts of lewd acts upon a child under the age of 14 (Pen. Code, § 288, subd. (a)),[1] two counts of forcible lewd acts on a child under 14 (§ 288, subd. (b)(1)), two counts of oral copulation or sexual penetration of a child 10 years old or younger (§ 288.7, subd. (b)), one count of lewd acts upon a child 14 or 15 years old (§ 288, subd. (c)(1)); and one count of possessing child pornography (§ 311.11, subd. (a)). The jury also found true a multiple-victim allegation under the meaning of the One Strike law (§ 667.61, subds. (b) & (e)(4)). The trial court sentenced Saran to an indeterminate term of 30 years to life on the two forcible lewd act counts (counts 11 and 12), plus a consecutive two-year determinate term for the lewd act on a 14- or 15-year-old child count 6). Concurrent terms were imposed on the remaining counts.

In his direct appeal, Saran raises three claims regarding 2 of the 12 convictions. Specifically, he challenges the sufficiency of the evidence to support his conviction for lewdly touching C.H. (count 2) and the evidence showing he used force when touching Celeste N. (count 11). He also contends his trial counsel provided constitutionally ineffective assistance by failing to object to the prosecutor's closing argument regarding count 11.

In his concomitant habeas corpus petition,[2] Saran again raises his claim of ineffective assistance, and includes his trial counsel's declaration stating she cannot remember having a tactical reason for not objecting to the prosecutor's closing argument regarding count 11.

We agree with Saran's sufficiency of the evidence claim on count 2. Consequently, we must vacate the concurrent two-year sentence imposed on that count. We conclude, however, ample evidence supports Saran's conviction on count 11.

---

[1] All further undesignated statutory references are to the Penal Code.
[2] We issued an order to show cause in the habeas corpus matter, and granted the Attorney General's request to consolidate the direct appeal with the writ petition.

On the related ineffective assistance of counsel claims, we conclude a tactical reason existed for trial counsel not to object to the prosecutor's closing argument. But even assuming counsel should have objected, Saran fails to demonstrate he was prejudiced by trial counsel's purported ineffectiveness. Because we resolve his ineffective assistance claim on the merits in the direct appeal, Saran's habeas corpus petition based on identical grounds must be denied.

Consequently, we affirm the judgment in part and reverse in part. On the consolidated habeas corpus petition, our order to show cause is discharged and the petition is denied.

I

FACTUAL BACKGROUND

This case encompassed 11 offenses and three victims, plus an unrelated child pornography offense. One set of charges (counts 1-6) involved offenses committed against two sisters in 2016. A second set (counts 7, 8, 10, 11, & 12) involved offenses committed against an unrelated young girl in 2008.[3] At issue here is one offense from each set.

*C.H. and J.H.*

In 2016, Saran molested his neighbor's two daughters, C.H. and J.H., who were 12 and 15 years old. He played a game with C.H. in which he would pick her up and toss her onto a bed. When he picked her up, he grabbed her by the crotch and fondled her vagina. Saran paid C.H. $5 for each time he threw her in this manner.

On another day, Saran took C.H. and J.H. to his house. At some point, he started tossing C.H. onto a bed, again touching her vagina each time he picked her up. This time he also touched her breasts and kissed her neck. He then pulled down her pants and licked her vagina. Finally, he grabbed C.H.'s hands and made her touch his penis.

---

[3] Count 9 charged Saran with possessing child pornography, but that conviction is unrelated to the other offenses and is not contested here.

Later that same day, J.H. was lying on her stomach playing a game on her phone in Saran's daughter's bedroom when Saran approached her from behind and grabbed her "butt" and "inner thigh."

*Celeste N.*

In 2008, Saran molested his friend's six-year-old daughter, Celeste N. at a Halloween party. After Celeste went to bed, Saran claimed he needed to use the restroom, but instead he went up to Celeste's room, undressed her from the waist down, and orally copulated her.

He returned downstairs, but later that night, he went back upstairs and found Celeste in the bathroom next to her bedroom. He grabbed her, pulled her toward him, and French kissed her. Celeste tried to push him away, but he was too strong for her. After French kissing Celeste, he took her back to her bedroom, where he orally copulated her again.

Sometime after the Halloween incident, during a get-together in Celeste's father's backyard, Saran molested Celeste again. While her father was momentarily inside, Saran grabbed Celeste and French kissed her again. This time she did not try to stop him or resist because she was afraid.

Saran molested Celeste a third time a few days before Christmas. Again, Celeste's father had invited Saran to his home. At some point Celeste went into her father's bedroom, Saran walked in, closed the door, and tossed Celeste onto the bed. He tried to pull her pants down. She told him to stop, scratched his face, broke free, and fled.

II

DISCUSSION

A. *Sufficiency of the Evidence: Counts 2 and 11*

Saran challenges the sufficiency of the evidence to support count 2 (lewdly touching C.H.'s buttocks), and count 11 (forcibly French kissing Celeste N. at the Halloween party). We agree with his first contention, but reject the second.

1. *Standard of Review*

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one." (*People v. Smith* (2005) 37 Cal.4th 733, 738.) We "'review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Story* (2009) 45 Cal.4th 1282, 1296; see *Jackson v. Virginia* (1979) 443 U.S. 307, 319 ["[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"].) "'"[W]e must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]"'" (*People v. Smith, supra,* 37 Cal.4th at pp. 738-739.)

Moreover, "[w]e resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 403.) It is the jury that weighs the evidence, assesses witness credibility, and resolves conflicts in the testimony. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.) Therefore, "[a] reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

### 2. *Evidence Saran Lewdly Touched Connie H.'s Buttocks (Count 2)*

Count 2 alleged that "[o]n or about September 11, 2016, in violation of Section 288(a) of the Penal Code," Saran committed a lewd act on C.H. by "touch[ing]" her "buttocks." (Capitalization omitted.) The jury's verdict form used the same phrasing.

Regarding this incident, C.H. testified Saran repeatedly threw her onto a bed, touching her vagina each time he picked her up. He touched her breasts and kissed her neck. He pulled down her pants and licked her vagina. And he grabbed her hands and made her touch his penis. When he stopped, she pulled her underwear and pants up by herself.

However, there was no evidence Saran lewdly touched C.H.'s *buttocks*. Indeed, the only evidence of a lewd buttocks-touching involved her sister *J.H.*, not C.H.[4] And Saran was separately charged and convicted of lewdly touching J.H.'s buttocks in count 6.

The Attorney General argues the jury reasonably could infer from Saran's other conduct, and his "propensity" for molestation, that he "also touch[ed] [C.H.]'s buttocks when he pulled her pants off" before to orally copulating her. The prosecutor made similar remarks in his closing argument: "It wasn't enough to just touch her vagina with this throwing game. Now he's kissing her on the neck. He is pulling down her shorts. *He is touching her buttocks.* He is in there between her legs, touching her legs." (Italics added.) Later in his argument, the prosecutor added, "[*he*] *touched her buttocks*, when he started to pull down her clothing." (Italics added.) However, therein lies the problem: C.H. was never asked about it, and in her testimony, she made no mention of her buttocks ever being touched.

---

[4] Notably, during their deliberations, the jury asked for a readback of C.H.'s testimony on "Count 2 . . . regarding touching buttocks."

Although it might be reasonable to infer Saran incidentally touched C.H.'s buttocks when he was removing her pants and underwear, it does not necessarily follow that such touching was done with the requisite lewd intent. Simply put, mere touching is not enough. Rather, as the jury was instructed, the touching must be done "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires" of the defendant. (CALCRIM No. 1110.)

When reviewing the record for substantial evidence, our power "'*begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination. . . .' [Citation.]" (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 681.) Even so, "substantial evidence does not mean any evidence, no matter how slight." (*People v. Baker* (2012) 204 Cal.App.4th 1234, 1247.) Rather, it is "evidence which, when viewed in light of the entire record, is of solid probative value, maintains its credibility and inspires confidence that the ultimate fact it addresses has been justly determined." (*People v. Conner* (1983) 34 Cal.3d 141, 149.) Because no substantial evidence supports the lewd touching of C.H.'s buttocks charged in count 2, we must reverse his conviction for that offense. The prosecution's failure to present sufficient evidence bars a retrial under the Double Jeopardy Clause. (*Burks v. United States* (1978) 437 U.S. 1, 18; *Greene v. Massey* (1978) 437 U.S. 19, 24 [same rule applies to the states].)

3. *Evidence Saran Forcibly French Kissed Celeste N. (Count 11)*

Count 11 alleged that "[o]n or between January 01, 2008 and September 14, 2009, in violation of Section 288(b)(1) of the Penal Code," Saran committed a "*forcible lewd act*" on Celeste N. by "kiss[ing] [her] mouth when victim was pushing defendant away the first time." (Capitalization omitted; italics added.) Again, the jury's verdict form was similarly phrased.

Celeste N. testified this happened the night of the Halloween party, when for the second time that night, Saran snuck upstairs and found her in the bathroom next to

7

her bedroom. He grabbed her, pulled her toward him, and French kissed her. She explained she tried to push him away, but he was too strong.

In his closing argument, the prosecutor misspoke, and said the forcible French kiss occurred during the *second* incident at the backyard party. Celeste, however, testified she was frightened and therefore did not resist being French kissed during the backyard party.

Saran now argues we must limit our review of whether the evidence supports a conviction for a forcible French kiss to whether it occurred in the backyard because "the prosecutor's factual election in closing argument made a unanimity instruction unnecessary on count 11." We do not find that contention persuasive.

The jury in a criminal case must unanimously agree the defendant is guilty of *a specific crime*. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 877; *People v. Jo* (2017) 15 Cal.App.5th 1128, 1178.) "'[I]f one criminal act is charged, but the evidence tends to show the commission of more than one such act, "*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act." [Citations.]' [Citation.]" (*People v. Jo*, at p. 1178; *People v. Grimes* (2016) 1 Cal.5th 698, 727 ["A unanimity instruction is required if there is evidence that more than one crime occurred, *each of which could provide the basis for conviction under a single count*" (Italics added)].)

In other words, the unanimity requirement "'is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.'" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)

For example, in *People v. Diedrich* (1982) 31 Cal.3d 263, the defendant was convicted of a single count of bribery, but the evidence showed two discrete bribes.

8

Our Supreme Court found the absence of a unanimity instruction reversible error "because without it, some of the jurors may have believed the defendant guilty of one of the acts of bribery while other jurors believed him guilty of the other, resulting in no unanimous verdict that he was guilty of any specific bribe. (*Id.* at pp. 280-283.)

Saran relies on *People v. Brown* (2017) 11 Cal.App.5th 332 (*Brown*). There, "[f]our male gang members lured a 15-year-old female victim to the bedroom of a house, got her falling-down drunk, then had sex with her against her will. She awoke to find herself on a mattress in a nearby vacant apartment. DNA recovered from her vagina was identified as that of defendant . . . ." (*Id.* at p. 334.) The prosecutor charged the defendant with one count of forcible rape and one count of rape in concert. An accomplice testified the defendant did not participate in the rape in concert that took place in the bedroom. Consequently, the prosecutor argued to the jury the defendant "must have taken the victim over to the vacant apartment and raped her there." (*Id.* at p. 334.)

The *Brown* court concluded that, although an appellate court ordinarily "can uphold a conviction on any factual theory that is supported by the evidence[,] . . . [w]hen the prosecution has elected to proceed on one factual theory, and when that election has obviated the need for a unanimity instruction, we are bound by the prosecution's election." (*Brown, supra,* 11 Cal.App.5th at p. 335.) "While there was sufficient evidence to support the prosecution's theory that defendant raped the victim in the vacant apartment, there was insufficient evidence of force in that scenario. On the other hand, . . . there was also sufficient evidence that defendant was one of the men who raped the victim in the bedroom; in that scenario, there was sufficient evidence that defendant's rape was forcible." (*Id.* at p. 335.)

Thus, the *Brown* holding is predicated on a situation where a prosecutor ties each charge to specific criminal acts *when a unanimity instruction would otherwise have been required*. If so, an appellate court is likewise bound by the prosecutor's election.

9

(*Brown, supra,* 11 Cal.App.5th at p. 341.)  And if the defendant later raises a sufficiency of the evidence challenge on appeal, "review is limited to whether there is sufficient evidence to support a conviction based exclusively on the act elected by the prosecution." (*Id.* at pp. 341-342.)

Here, however, the prosecutor made a *mistake* regarding count 11, not an *election*.  There was no need for a unanimity instruction—or an election—because two distinct French kissing offenses were charged, one forcible and one not, and there was no possibility the jury would conflate the two.[5]

Saran's entire analysis ignores count 8, which alleged a *nonforcible* lewd act on Celeste N. when he "kissed [her] mouth the first time."  The jury's verdict on that count was similarly phrased.  Thus, Saran was charged with, and convicted of, two *distinct offenses* against Celeste N. which involved French kissing: counts 8 and 11.  This is not a situation where the evidence showed "'the commission of more than one such act'" that could constitute a *single charge* of forcible French kissing.  (*Brown, supra,* 11 Cal.App.5th at p. 341; see *People v. Leonard* (2014) 228 Cal.App.4th 465, 487 [evidence did not establish "two discrete events" which could support a single charge, requiring an election]; cf. *People v. Salvato* (1991) 234 Cal.App.3d 872, 878 ["The doctrine of election protects two procedural rights of the criminal defendant in cases *where the evidence tends to show a larger number of offenses than have been charged*; the right to a unanimous jury verdict and the right to be advised of the charges" (italics added)].)

---

5.    A unanimity instruction *was* given with regard to count 3 ("Kiss *or* Lick" C.H.'s neck) and count 6 ("Touch Leg *or* Buttocks" of J.H.), but not for count 11.  (See CALCRIM No. 3501.)  During preinstruction discussions, the prosecutor specifically told the court counts 3 and 6 were "the only counts that had more than one act to constitute the crime. . . .  All of the other counts appear to have just one act alleged."  The prosecutor maintained his need for an "election" applied only to those two counts, and the court correctly agreed.

10

Neither the evidence nor the charges created a situation similar to that found in *Brown*. There was no danger here six jurors would find the Halloween incident forcible and six would find the backyard incident forcible in reaching their verdict on count 11; nothing in Celeste N.'s testimony suggested the backyard incident was forcible. (See *Brown, supra,* 11 Cal.App.5th at p. 341 ["The evidence still comes solely from the witnesses"].) Moreover, the jury must have unanimously agreed on the forcible act or they would not have had a basis to also convict Saran on the nonforcible French kiss in count 8.

Simply put, the jury in this case was not confronted with a situation in which it risked convicting defendant "'on a single count . . . based on two or more discrete criminal events.'" (*People v. Russo, supra*, 25 Cal.4th at p. 1135; *Brown, supra*, 11 Cal.App.5th at p. 341.) Consequently, there was no need for either a unanimity instruction or a prosecutorial election. Nor did the prosecutor make such an "election" on count 11. Because the evidence did not show multiple forcible acts in support of the single charge found in count 11, *Brown* is inapplicable, and our review is not limited by the prosecutor's factually confused closing argument. (Compare *Brown, supra*, 11 Cal.App.5th at p. 341.)

Furthermore, based on Celeste N.'s uncontroverted testimony, substantial evidence supported convictions for *both* count 8 and count 11, including how, when, and where they occurred. No more than we are, the jury was not limited to the prosecutor's mistaken factual "theory." (See *People v. Perez* (1992) 2 Cal.4th 1117, 1126 ["It is elementary, however, that the prosecutor's argument is not evidence and the theories suggested are not the exclusive theories that may be considered by the jury"]; *People v. Leonard, supra,* 228 Cal.App.4th at p. 487 [same].) Saran's conviction on Count 11 is amply supported by the evidence adduced at trial.

B. *Ineffective Assistance of Counsel*

As discussed, Celeste N. testified Saran kissed her on two separate occasions. During closing argument, the prosecutor misspoke and confused the forcible Halloween kiss with the nonforcible backyard kiss. "It is well settled that it is misconduct for a prosecutor to base argument on facts not in evidence." (*People v. Mendoza* (2016) 62 Cal.4th 856, 906.) Trial counsel, however, did not object to the prosecutor's mischaracterization of Celeste N.'s testimony.

To preserve an appellate claim of prosecutorial misconduct during trial, "'"a criminal defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety."'" (*People v. Powell* (2018) 6 Cal.5th 136, 171.) Generally, a failure to object forfeits the claim on appeal. (*People v. Flores* (2020) 9 Cal.5th 371, 403.)

To avoid forfeiture, Saran takes a different tack, and contends he received constitutionally ineffective assistance of counsel because his attorney failed to object to the prosecutor's misstatement of the evidence.

1. *Legal Background*

"An ineffective assistance claim has two components: A [defendant] must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." (*Wiggins v. Smith* (2003) 539 U.S. 510, 521 (*Wiggins*); *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) Both "are mixed questions of law and fact subject to our independent review." (*In re Gay* (2020) 8 Cal.5th 1059, 1073.)

Regarding the deficient performance component, "[t]here are countless ways to provide effective assistance [and] [e]ven the best criminal defense attorneys would not defend a particular client in the same way." (*Strickland, supra*, 466 U.S. at p. 689.) As a result, "to establish deficient performance, a [defendant] must *demonstrate* that counsel's representation 'fell below an objective standard of reasonableness,'" as measured by "'prevailing professional norms.'" (*Wiggins, supra*, 539 U.S. at p. 521,

12

italics added; see *Bobby v. Van Hook* (2009) 558 U.S. 4, 7 ["[T]he Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices"].)

"When applying this standard, we ask whether any reasonably competent counsel would have done as counsel did. . . . Judicial review of counsel's performance is deferential; to establish deficient performance, the defendant 'must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."'" (*In re Gay, supra*, 8 Cal.5th at p. 1073; see *Harrington v. Richter* (2011) 562 U.S. 86, 105 ["standard for judging counsel's representation is a most deferential one"]; see also *Bell v. Cone* (2002) 535 U.S. 685, 702 [same].)

In this regard, trial counsel's declaration in support of Saran's habeas corpus petition is significant for what it does *not* say. Counsel states her "trial notes have gone missing," and "[d]espite an extensive search," she and her staff were "unable to locate" them. Consequently, she says she "ha[s] no independent recollection of having a tactical reason for not objecting to the prosecutor's misstatement of the facts."

As for the prejudice component of the test, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." (*Strickland, supra*, 466 U.S. at p. 693.) Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694.)

Moreover, "[a]lthough we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the

13

alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.  Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." (*Strickland, supra*, 466 U.S. at p. 697.)

> 2. *Analysis*

Trial counsel in her declaration did not say she had no tactical reason for not objecting; rather, only that she could not recall whether she did.  One tactical reason is readily apparent, however.  Counsel did not object because doing so would have alerted the prosecutor to the mistake and allow him to correct it and avoid possibly confusing the jury.

Even assuming Saran could meet his burden of establishing his trial counsel's performance was constitutionally deficient, we still would need to address how this supposed deficiency affected the case.

"How readily deficient performance undermines confidence in the trial's outcome will in part depend on the strength of the trial evidence on any decisive points. A 'verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.' [Citation.]" (*In re Gay, supra,* 8 Cal.5th at p. 1087.)  "An analysis of prejudice . . . does not involve the application of 'mechanical rules.' [Citation.]  Instead, 'the ultimate focus . . . must be on the fundamental fairness of the proceeding whose result is being challenged.  In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" (*Ibid*.)

As discussed, substantial evidence in the form of Celeste N.'s unambiguous and uncontroverted testimony established she was French kissed twice: once forcibly on Halloween, and once nonforcibly at the backyard event.  There is no indication the

14

prosecutor's mistaken remarks so "infect[ed] the trial with such unfairness as to make defendant's conviction a denial of due process [citation] or to render the verdicts unreliable." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1130.) Similarly, there is nothing showing a reasonable probability the jury was similarly confused and relied on the prosecutor's remarks rather than Celeste N.'s testimony regarding which of the French kiss incidents was forcible.

Furthermore, the trial court twice instructed the jury that the attorneys' opening statements and closing arguments did not constitute evidence.[6] (CALCRIM No. 222.) We presume the jury followed the court's instructions (*People v. Martinez* (2010) 47 Cal.4th 911, 957), and Saran has provided nothing to rebut that presumption. In addition, Saran had a full opportunity "to challenge and rebut all evidence offered against him." (*People v. Wrest* (1992) 3 Cal.4th 1088, 1109-1110; accord, *People v. Dykes* (2009) 46 Cal.4th 731, 762.) The prosecutor's isolated misstatement of the evidence did not affect the fairness of his trial or the reliability of the jury's verdicts.

"A mere failure to object to argument seldom establishes counsel's incompetence." (*People v. Thomas* (1992) 2 Cal.4th 489, 531.) And "this case is no exception." (*Ibid.*) In light of the court's cautionary instructions and Saran's ability to challenge Celeste N.'s testimony on cross-examination, we discern neither prejudice nor a denial of his right to a fair trial based solely on the prosecutor's mistaken closing argument. This was not a close case, and it is not reasonably probable the result would have been different had trial counsel objected to the prosecutor's incorrect statement.

---

[6] Actually, *three* times. Before closing arguments began, the court also told the jury: "Remember, what the attorneys say is not evidence. And we always have the luxury of the court reporter. If you hear that the attorney said 'X,' and you think, 'I'm not sure that's true,' you can always double-check."

Thus, Saran fails to demonstrate his lawyer's failure to object prejudiced his chances at trial or undermines our confidence in the outcome. We therefore conclude Saran has failed to show his trial counsel was constitutionally ineffective.

C. *The Habeas Corpus Petition*

As noted, Saran also brought a petition for writ of habeas corpus, which has been consolidated with the direct appeal. His habeas petition raises the same ineffective assistance of counsel claim advanced in his appeal.

On habeas corpus, Saran "bears the burden of proving his entitlement to relief by a preponderance of the evidence." (*In re Gay, supra,* 8 Cal.5th at p. 1072.) Saran has offered nothing to establish, or to suggest he could establish, the prejudice prong of the *Strickland* test.

Instead, he provides a declaration from trial counsel to ostensibly support the *first* prong of the *Strickland* test, in which she states she cannot recall having a tactical reason for not objecting to the prosecutor's closing argument. Even assuming this sufficiently establishes deficient performance, it is not sufficient for habeas corpus relief. Just as with a direct appeal based on ineffective assistance of counsel, to prevail on habeas corpus a petitioner must establish "that counsel's deficient performance was prejudicial to the defense." (*In re Wilson* (1992) 3 Cal.4th 945, 958.) Trial counsel's ambiguous declaration does not assist him in doing so.

We have determined there was a sound tactical basis for trial counsel not to object to the prosecutor's mistaken remarks in closing argument. And regardless whether counsel entertained this strategy, the failure to object was not prejudicial. Saran's habeas corpus petition adds nothing in this respect, so his petition for habeas corpus relief also must be rejected. (*In re Waltreus* (1965) 62 Cal.2d 218, 225.)

## III

### DISPOSITION

In case G058087, the conviction on count 2 is reversed and the two-year concurrent sentence imposed on that count is vacated. Upon issuance of the remittitur, the superior court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects the judgment is affirmed.

In case G058920, the order to show cause is discharged, and the petition for writ of habeas corpus is denied.


ARONSON, J.


WE CONCUR:


MOORE, ACTING P. J.


FYBEL, J.

17