Filed 10/22/20  P. v. McDowell CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DEMETRIUS MCDOWELL,<br><br>    Defendant and Appellant. | 2d Crim. No. B299613<br>(Super. Ct. No. BA468894)<br>(Los Angeles County) |

Demetrius McDowell appeals from the judgment after the jury convicted him of criminal threats (Pen. Code,[1] § 422, subd. (a)), three counts of assault with a deadly weapon (§ 245, subd. (a)(1)), vandalism over $400 (§ 594, subd. (b)(1)), and a misdemeanor violation of a court order (§ 166, subd. (a)(4)). The trial court found true an enhancement for serving a prior prison term (§ 667.5, subd. (b)).  The court sentenced McDowell to

---

[1] Unless otherwise noted, all subsequent statutory references are to the Penal Code.

state prison for seven years, plus 364 days consecutive for the misdemeanor, and imposed various fines and assessments.

McDowell contends: (1) the evidence was insufficient to establish a criminal threat, (2) the trial court erred in denying his motion for a mistrial, (3) the prior prison term enhancement must be stricken, and (4) the trial court erred in failing to consider his ability to pay fines and assessments. We order the prior prison term enhancement stricken, remand for resentencing, and otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

McDowell was charged with two counts of making criminal threats (§ 422, subd. (a)), seven counts of assault with a deadly weapon (a motor vehicle) (§ 245, subd. (a)(1)), vandalism causing damage over $400 (§ 594, subd. (b)(1)), and a misdemeanor violation of disobeying a court order (§ 166, subd. (a)(4)). After a trial, the jury found McDowell guilty of criminal threats against Airrika D. (count 1), three counts of assault with a deadly weapon against Ranae A., Lula T., and Ryan M. (counts 4, 6, and 11), vandalism (count 9), and disobeying a court order (count 10). He was acquitted of the remaining counts.

The court sentenced McDowell to state prison for two years for count 1, one year consecutive for count 6, two years consecutive for count 9, one year consecutive for count 11, one year consecutive for the prior prison term enhancement, four years concurrent for count 4, and 364 days consecutive for count 10.

*Trial evidence*

In approximately April of 2018, property manager Airrika D. notified McDowell he was being evicted from his apartment. He became upset, reacted with profanity, and

2

expressed his frustration and anger. He was given 30 days to retrieve his property but did not do so.

McDowell telephoned Airrika D. about ten times between 9:00 or 10:00 p.m. on June 7, 2018, and 1:00 a.m. the next morning. He said he wanted to come to get his things. Airrika D. said he could do so for an hour. McDowell said, "Bitch, if you don't let me come get my shit, I'm gonna fuck you up. I'm gonna kill you. I'm coming there tomorrow and like pretty much I don't give a fuck." Airrika D. said if he came, she would call the police. He responded, "I'll kill everybody in that motherfucker," and "I could show you better than I can tell you." She was not frightened at that point.

On the morning of June 8, McDowell came to the apartment complex and tried to pick the lock to his former apartment. Airrika D. confronted McDowell and said if he didn't leave, she would call the police. He threatened to kill her and said, "I will kill everyone here." She was afraid McDowell could harm her "because he terrorizes the entire neighborhood," and because of his threats over the phone the night before.[2]

Airrika D. called the police. McDowell left before they arrived. One of the responding officers, Officer Haney, believed Airrika D. was afraid of McDowell.

McDowell returned later that morning. He crashed his van into the driveway gate of the apartment complex next

---

[2] Detective Day, who interviewed Airrika D., testified about the confrontation at the door and McDowell's threats at that time. At trial, Airrika D. denied she confronted McDowell at the door. But she admitted telling Day "that, after [she] confronted the defendant, the defendant actually warned [her] that, if [she] did call the police, that he was gonna—gonna kill everyone there."

door to his former apartment complex. He backed up and crashed into the gate two or three times.

Airrika D. was terrified at that point. She could hear McDowell saying, "I'm gonna kill everyone." She belly crawled to the bathroom and got in the bathtub.

When McDowell was crashing against the gate, several children were playing in an inflatable jumper next to the gate. These included three children of Selena G. and Ryan M. The children ran away screaming. Ryan M. pushed a dumpster against the gate and held it there to keep the van from entering. While Ryan M. was standing behind the dumpster, McDowell backed up and hit the gate again. The gate was destroyed.

*Motion for mistrial*

McDowell testified that he did not threaten Airrika D. or the neighbors. He testified that his foot got stuck under the gas pedal and he hit the gate accidentally.

In rebuttal, the prosecution called Officer Bustamante to testify about a prior incident to show McDowell's intent and lack of mistake. (Evid. Code, § 1101, subd. (b).) Officer Bustamante testified that he and another officer contacted McDowell on January 3, 2018. McDowell said, "[W]hen I get out I'm gonna blow up and kill those fucking Mexicans." He made statements that Officer Bustamante believed referred to Selena G., Ryan M., and members of their family, including that "he wanted to put those Mexicans in a coffin." The prosecutor asked, "How many times did he tell you that?" Officer Bustamante responded, "Quite a few times. He kept emphasizing. He would curse about it. He would call them 'fucking Mexicans.' He said, 'The only good Mexican is a dead

4

Mexican.' He was very vocal about how he felt about them and what he wanted to do."

The defense objected to the statement, "The only good Mexican is a dead Mexican." At the request of the defense, the court ordered the statement stricken.

The defense attorney asked for a mistrial and said he had not received discovery of this statement. He said, "we have a number of what appear to be Latino people on the jury." The prosecutor said she was not aware of that statement before Officer Bustamante testified. The court responded that it was not a willful discovery violation, but was "very inflammatory" and "just popped out of the officer's mouth." The court denied the motion for a mistrial. Instead, the court admonished the jury, "You're not to consider it for any purpose. You're not to discuss it in the jury room. You're to treat it as though you never heard it."

DISCUSSION

*Sufficiency of the evidence*

McDowell contends insufficient evidence supports the conviction of making a criminal threat. We review the evidence ""'in the light most favorable to the judgment.'"" (*People v. Veamatahau* (2020) 9 Cal.5th 16, 35.) We do not "resolve credibility issues or evidentiary conflicts" but instead determine "whether there is ""substantial evidence of the existence of each element of the offense charged""' such that any rational jury may have convicted defendant." (*Id*. at p. 36.)

Violation of section 422 requires the prosecution prove: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if

5

there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.) "'The use of the word "so" indicates that unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim.'" (*People v. Bolin* (1998) 18 Cal.4th 297, 340.)

At trial, Airrika D. denied she confronted McDowell on June 8 and that he threatened to kill her that morning. But Detective Day testified that she said McDowell threatened to kill her at that time. Prior inconsistent statements are admissible to prove their substance as well as to impeach the declarant. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1144, overruled on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151.) It is the exclusive province of the jury to resolve conflicts in the evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) We "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*Ibid*.) The evidence was sufficient here for the jury to conclude that McDowell threatened Airrika D. the morning he crashed into the gate.

In determining whether McDowell intended his words to be taken as a threat, and whether they conveyed to the victim "an immediacy of purpose and immediate prospect of execution," the jury may consider the surrounding circumstances, the history between the parties, and events occurring after the statement. (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340-1342.) In *Mendoza*, the victim was not immediately frightened by the defendant's statement that he was "going to talk to some guys" from his gang, but she became afraid for her life 30 minutes later when gang members came to her house, honked their horns, and "put the word out on the street they were looking for her." (*Id*. at p. 1341.) Similarly, *People v. Martinez* (1997) 53 Cal.App.4th 1212 affirmed a conviction for section 422 where an ambiguous statement ("I'll get you") was followed by an arson at the victim's workplace. The court noted, "Defendant's activities after the threat give meaning to the words and imply that he meant serious business when he made the threat." (*Id*. at p. 1221.) Here, even if Airrika D. was not afraid when she first confronted McDowell at his apartment door, she was afraid after he demonstrated he "meant serious business" by ramming the gate where children were playing. She testified that she remained afraid of him at the time of trial.

This case is unlike *In re Ricky T*. (2001) 87 Cal.App.4th 1132. There, when a teacher accidentally hit a 16-year-old student with a door, the student said, "I'm going to get you." The court held that given the "surrounding circumstances," the statement did not violate section 422 because it was ambiguous, did not threaten immediate harm, and did not cause sustained fear. (*Id*. at pp. 1137-1138, 1140.)

7

We distinguished *In re Ricky T.* in *People v. Orloff* (2016) 2 Cal.App.5th 947, 954.  In that case, we affirmed a conviction for section 422 based on the statement, "You're dead." The statement followed an earlier dispute with the victim.  And although Orloff (like appellant) was in a wheelchair, the victim believed he was capable of firing a gun.  We concluded that "Unlike *Ricky T.*, appellant's threat was not merely 'an angry adolescent's utterances.'"  (*Ibid.*)

Like *People v. Orloff*, and unlike *In re Ricky T.*, McDowell did not make a vague threat to "get" Airrika D.  He said he would *kill* her.  The history of their dispute, including his threats the night before, his arrival at the apartment the next morning and repetition of his threats to kill her, his actions in ramming the gate, and the victim's two calls to police after being threatened, all support the conviction for section 422.

McDowell focuses on the phone calls of June 7 and argues Airrika D. was not afraid at that time.  But during closing argument, the prosecutor made clear that the charge of threatening Airrika D. was based on McDowell's statement on June 8 when he came to the apartment, and not on threats made over the telephone the night before.  The jury was bound by the prosecutor's election of acts.  (*People v. Brown* (2017) 11 Cal.App.5th 332, 341.)

McDowell's threat to kill Airrika D. and "kill everyone here" satisfied the elements of section 422.  It was clearly a threat to commit a crime that would result in death. McDowell's ramming the fence where children were playing is evidence he meant his threat to be taken seriously and with a gravity of purpose.  Airrika D. remained afraid of McDowell at the trial.  McDowell's statements and conduct constituted

8

substantial evidence upon which the jury could reasonably conclude that her fear was reasonable.  Substantial evidence thus supports the conviction.

*Motion for mistrial*

McDowell contends that the trial court was required to grant his motion for mistrial after Officer Bustamante testified that McDowell said, "The only good Mexican is a dead Mexican." We are not persuaded.

We review the denial of a motion for mistrial for abuse of discretion.  (*People v. Avila* (2006) 38 Cal.4th 491, 573 [reference to defendant being in prison cured by jury admonition].)  "[I]t is only in the 'exceptional case' that any prejudice from an improperly volunteered statement cannot be cured by appropriate admonition to the jury."  (*People v. Franklin* (2016) 248 Cal.App.4th 938, 955.)  The jury here was admonished to not consider the statement.  "We presume the jury followed the court's instructions."  (*Avila*, at p. 574.)

Admission of a defendant's use of racial epithets is not necessarily so prejudicial as to deny the defendant a fair trial. (*People v. Quartermain* (1997) 16 Cal.4th 600, 627-629.)  In *Quartermain*, the court admitted racial epithets by the defendant describing the victim, who was Black, and describing members of the victim's race generally.  (*Id*. at pp. 627-628.)  The court held that "[e]xpressions of racial animus by a defendant towards the victim and the victim's race" were relevant to the defendant's motive.  (*Id*. at p. 628.)

McDowell contends the statement was prejudicial because there "appear to be Latino people on the jury."  This observation alone, without further supporting evidence, is too

9

speculative to establish prejudice or a miscarriage of justice. (*People v. Williams* (1988) 44 Cal.3d 883, 932-933.)

While the stricken statement refers to Mexicans generally, it is similar in tone to statements that were properly admitted, which also clearly show McDowell's animosity towards Latinxs. Exposing the jury to the additional statement did not "irreparably damage" the right to a fair trial. (*People v. Silva* (2001) 25 Cal.4th 345, 372-373.) Any prejudice is even more attenuated here because the statement was stricken and the jury admonished to disregard it. The trial court did not abuse its discretion by denying the motion for mistrial.

### *Prior prison term*

On October 8, 2019, the Governor signed Senate Bill No. 136. This legislation provides that effective January 1, 2020, the imposition of a one-year term pursuant to section 667.5, subdivision (b) is limited to prior prison terms for sexually violent offenses. The prior prison term here was for assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(1)), which is not a sexually violent offense.

We accept the Attorney General's concession that Senate Bill No. 136 applies to McDowell's sentence. (*People v. Winn* (2020) 44 Cal.App.5th 859, 872.) The section 667.5, subdivision (b) enhancement is stricken. (*People v. Wright* (2019) 31 Cal.App.5th 749, 756-757, superseded by statute on another ground as stated in *People v. Barton* (2020) 52 Cal.App.5th 1145, 1153.) The case is remanded for resentencing, at which time the trial court may reconsider all sentencing choices, so long as the aggregate prison term is not increased. (*People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1260.) At resentencing, the trial court can resolve any

remaining discrepancies between the previous oral pronouncement of sentence, the minute order, and the abstract.

*Ability to pay*

The trial court imposed a $400 restitution fine (§ 1202.4, subd. (b)), a $240 court operations assessment (§ 1465.8), and a $180 conviction assessment (Gov. Code, § 70373). McDowell contends the trial court erred in not considering his ability to pay. (*People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1164.)

If this were the only issue in this appeal, McDowell would have forfeited it because he did not object to the fine or assessments in the trial court or seek to introduce evidence regarding his ability to pay. (*People v. Torres* (2019) 39 Cal.App.5th 849, 860.) But because we are striking the prior prison term enhancement and remanding for reconsideration "of every aspect of [the] defendant's sentence" (*People v. Buycks*, *supra*, 5 Cal.5th at p. 893), McDowell may raise the issue of ability to pay the fine and assessments at the resentencing hearing. (*People v. Herrera* (2020) 52 Cal.App.5th 982, 996, review granted Oct. 14, 2020, S264339.)

DISPOSITION

The one-year prior prison term enhancement imposed pursuant to section 667.5, subdivision (b) is stricken. The case is remanded for resentencing, at which time the trial court shall consider McDowell's ability to pay the fines and assessments. The clerk of the court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

11

TANGEMAN, J.

We concur:

GILBERT, P. J.          PERREN, J.

Michael D. Abzug, Judge

Superior Court County of Los Angeles

_____

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.