Filed 11/29/23  P. v. Sanchez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080429 |
| v. | (Super.Ct.No. FWV22001920) |
| ANGEL REY SANCHEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Corey G. Lee, Judge. Affirmed.

Ellen M. Matsumoto, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Heather B. Arabarri and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

1

Angel Rey Sanchez argues his trial counsel provided him with ineffective assistance by agreeing to a response the trial court provided to a jury question. He was charged with two counts reflecting two acts of assault by means of force likely to cause great bodily injury when attacking his estranged biological mother. As argued, the first was punching and kicking her on a landing outside her apartment, and the second was pushing her down the nearby stairs after she stood up and pointed a knife at him. The jury asked the court to "specify the two 2 counts" and whether "specific evidence pertain[ed] to one charge vs. the other." With the agreement of counsel, the trial court concluded the prosecution had clearly distinguished the two acts and responded to the jury by saying only that the two counts pertain to two different acts.

We conclude Sanchez's claim fails for several reasons. The response to the jury's inquiry was legally correct. There was an evident reasonable tactical basis for agreeing to it. And it is not reasonably probable the jury would have reached a more favorable result if the trial court had reiterated the prosecution's election as to which acts applied to which count in its response. We therefore affirm the judgment.

**I**

**FACTS**

This case involves a violent episode that led to Sanchez's conviction by a jury on two counts of assault by means of force likely to produce great bodily injury. (Pen. Code, § 245, subd. (a)(4); unlabeled statutory citations refer to this code.)

The victim was Sanchez's biological mother, T.E., who had lost custody of Sanchez many years earlier, when he was around five- to seven-years old. Sanchez and T.E. had a limited relationship.

On June 5, 2022, Sanchez went to T.E.'s apartment on Valley Boulevard in Bloomington. There, Sanchez began drinking alcohol and became heavily intoxicated and threw up inside her apartment. T.E. said she felt Sanchez was disrespecting her home and feared his conduct would disturb her neighbors and cause her to lose her housing.

T.E. opened her front door and told Sanchez to leave. Sanchez threatened to attack her and then ran forward and pushed T.E. through the door to the landing outside her apartment. T.E. dropped to the ground to protect her body, and Sanchez began punching and kicking her. After T.E. stood up, Sanchez threw or pushed her down the stairs, and she rolled to the bottom.

T.E. testified that she kept a knife in the apartment to protect herself and was holding it during the assault. She said she did not use the knife against Sanchez, but she pointed it at him before he threw her down the stairs. She said she got up and went back up the stairs to prevent Sanchez, who was still at the top, from going back into her home. She said she still had the knife in her hand at that point. Sanchez told her he would leave if she gave him the knife, which she did, and he left.

T.E. called 911 and reported the assault. A San Bernardino deputy sheriff responded to the call and found Sanchez face down on a sidewalk outside the apartment building. The deputy said Sanchez was covered in vomit and appeared heavily

3

intoxicated. Sanchez had scrapes on his back and finger and a cut on his nose. The deputy said Sanchez appeared to be disoriented, unable to answer questions, and in and out of consciousness. The deputy found T.E. "severely injured with multiple bumps, bruises, scratches all over her face and her body." A hospital examination found she had bruising and abrasions on her face, hands, and back.

Sanchez testified and denied assaulting T.E. He said he went to her house because he had been in a homeless shelter and had a job interview. He wanted a place to shower and help buying some clothes. T.E. gave him money, and they went to a liquor store where he bought a pint of cinnamon-flavored whiskey and clothes. He said drinking that amount normally would put him to sleep, but instead it put him into a state he had never experienced before. He said he passed out and woke with a cut on his finger and marks on his face. He said he believed T.E. had laced his drink. Sanchez admitted he did not have a good relationship with his mother but said he would never assault her.

In instructing the jury, the trial court used CALCRIM No. 875 for the assault in count one and CALCRIM No. 875.1 for the assault in count two. As to the first count, the court instructed the jury, "The defendant is charged in Count One with assault with force likely to produce great bodily injury in violation of Penal Code section 245. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] . . . The defendant did an act that by its nature would directly and probably result in the application of force to a person, and [¶] . . . The force used was likely to produce great bodily injury; [¶] . . . The defendant did that act willfully; [¶] . . . When the defendant

4

acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] AND [¶] . . . When the defendant acted, he had the present ability to apply force likely to produce great bodily injury to a person." The instruction for count two was identical but added a fifth element—that "[t]he defendant did not act in self-defense." The court also instructed that simple assault is a lesser included offense for each count and reiterated that the defense of self-defense applied only to count two. No instruction specified what acts related to each count.

In closing arguments, the prosecution elected Sanchez's punching and kicking T.E. as the assault for count one and the act of throwing T.E. down the stairs as the assault for count two. As to count one, the prosecutor said the evidence was that Sanchez "began to beat her. He kicked her. He punched her. . . . [¶] Therefore, that's the act. The kicking, the punching, that by its very nature would directly and probably result in force." As to count two, the prosecutor said, "[W]hat is Count 2? Count 2, you are going to be presented with your packet that includes 875.1. It adds one additional element. The defendant did not act in self-defense. . . . [¶] Count 2 is the stairs. . . . after Count 1, after kicking her, after punching her, at some point they got up, and he lifted her up, and he threw her down the stairs." The prosecution also distinguished the two counts by arguing T.E.'s knife never came out before count 1 and therefore, Sanchez's self-defense claim applied only to count 2.

Defense counsel made the same distinction in her closing argument. Speaking of inconsistencies in T.E.'s testimony, counsel said, "She says that the first part of what happened, Count 1, is that Mr. Sanchez kicks and punches her. But her injuries don't quite line up with that; right? . . . [¶] Her injuries are consistent with falling down the stairs and scraping. How many times did we hear about scraping? . . . So her injuries are consistent with being pushed down the stairs. But there is no evidence whatsoever with the Count 1 allegation, which is the kicking and punching. Remember, there's two different counts. Count 1 we have the initial kicking and the punching, and Count 2 is pushing down the stairs." Defense counsel similarly clarified that on "the allegation of kicking and punching, we're not claiming self-defense. But the allegation of pushing down the stairs, we are claiming self-defense."

In argument, defense counsel questioned why there were two separate counts. "Now, why are there two counts? Okay. This is a question that you should ask yourselves. Why? Why did the People charge this as two separate counts, and where do we draw the line? Why not charge him with one charge for kicking, and one count for punching, and one count for pushing? Why not just charge him with five or ten counts? If you believe it is excessively charged, that can be your determination as a jury. This is one continuing line of conduct." The prosecution objected that this argument misstated the law, and the parties had an unreported bench conference, after which defense counsel moved on to another topic. The court later put on the record that it had sustained the

6

objection because it was improper to ask jurors to consider charging decisions, which are not evidence.

Early in their deliberations, the jury asked the court to "Please specify the 2 counts. Is specific evidence pertaining to one charge vs. the other[?]"The trial court discussed possible responses with the prosecutor and an attorney standing in for defendant's trial counsel. The trial court included defendant's trial counsel by telephone. The parties agreed not to "clarify that one charge was kicking and punching versus the second charge related to the stairwell incident" because "it was pretty clear during closing arguments that Count 1 was pertaining to the kicking and punching, and Count 2 was pertaining to the stairwell incident." Instead, the court decided to say only, " 'Counts 1 and 2 pertain to two different acts.' Leave it at that, and send it back."

After receiving this answer, the jury requested a read-back of T.E.'s testimony leading up to the point where she was questioned about the knife. The jury then asked for a read-back of Sanchez's testimony. When those read-backs were completed, the jury asked, "Where did [T.E.] testify to being located before she was pushed/thrown down the stairs. She answered numerous times." The court responded by referring the jury to the second paragraph of CALCRIM No. 200, which instructs, "You must decide what the facts are. It is up to all of you, and you alone, to decide what happened, based only on the evidence that has been presented to you in this trial." The jury responded by requesting a read-back of T.E.'s testimony about her location before being thrown down the stairs. Ten minutes after that read-back, the jury returned guilty verdicts on both counts.

The trial court sentenced Sanchez to a total state prison term of four years—a middle term three-year sentence on count one and a consecutive one-year sentence (one-third the middle term) on count two.

## II

## ANALYSIS

Sanchez's ineffective assistance of counsel argument is viable only if the trial court gave an insufficient answer to the jury's request that he claims counsel should not have agreed to. The jury asked the trial court to "specify the 2 counts" and instruct whether there "[i]s specific evidence pertaining to one charge vs. the other."[1] Sanchez argues the court's answer that the two counts "pertain to two different acts," allowed the jury to find him guilty of both counts based on only the acts of punching and kicking. He says the court should have confirmed the prosecution's closing-argument election that count one related to his acts of punching and kicking while count two related to his act of pushing or throwing the victim down the stairs. However, it is generally sufficient for the prosecution to "make an election by 'tying each specific count to specific criminal acts elicited from the victim's testimony—typically in opening statement and/or closing argument." (*People v. Brown* (2017) 11 Cal.App.5th 332, 341 (*Brown*).)

---

[1] Sanchez concedes that because his trial attorney agreed to the trial court's answer, he has forfeited a direct challenge to the trial court's decision on appeal. (*People v. Thornton* (2007) 41 Cal.4th 391, 427; see also (*People v. Harris* (2008) 43 Cal.4th 1269, 1317 [invited error by proposing an answer the court gave the jury.]. He therefore focuses his claim on ineffective assistance.

8

To establish ineffective assistance of counsel, Sanchez must show (1) deficient performance by trial counsel that fell below an objective standard of reasonableness under prevailing professional norms, and (2) a reasonable probability he would have obtained a more favorable result but for his trial counsel's alleged deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688.)

In deciding whether performance was deficient, we "give great deference to counsel's tactical decisions." (*People v. Holt* (1997) 15 Cal.4th 619, 703.) Where the record does not show why counsel acted or failed to act in a certain way, we will reject the claim "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." (*People v. Kraft* (2000) 23 Cal.4th 978, 1069.) Here, the record does not disclose trial counsel's basis for agreeing to the response to the jury question, though the trial court indicated agreement with its rationale that the prosecution's election in closing argument was sufficient for the jury.

With these standards in mind, we conclude Sanchez's ineffective assistance claim fails for several reasons. First, he cannot show his counsel's agreement with the trial court fell below an objective standard of reasonableness. When a jury sends out a question, the court is presented with the statutory obligation "to provide the jury with information the jury desires on points of law." (*People v. Smithey* (1999) 20 Cal.4th 936, 985.) Under "section 1138 the court must attempt 'to clear up any instructional confusion expressed by the jury.' " (*People v. Giardino* (2000) 82 Cal.App.4th 454, 465.) "This means the trial 'court has a primary duty to help the jury understand the legal principles it

is asked to apply. [Citation.] This does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, *the court has discretion* under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.] Indeed, comments diverging from the standard are often risky.' " (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1015, quoting *People v. Beardslee* (1991) 53 Cal.3d 68, 97, italics added.) Sanchez argues the jury's inquiry revealed confusion about the prosecution's election, which the trial court was required to clear up in its response.

There is no requirement that the trial court build a prosecutor's election into jury instructions. In *People v. Jones* (1990) 51 Cal.3d 294, our Supreme Court explained that where the evidence discloses more acts than offenses charged, "[e]ither the prosecutor must select the acts relied on to prove the charges, or the jury must be given an instruction that it must unanimously agree beyond a reasonable doubt that the defendant committed the same specific criminal act." (*Id*. at p. 307.) This holding has come to be known as the " 'either/or' rule." (*People v. Gear* (1993) 19 Cal.App.4th 86, 90.) If the prosecution had not made an election in this case, the trial court would have been required to tell the jury that each juror must agree on the act or acts which constitute each offense. (*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1454-1455.) Such an instruction would have precluded the jury from convicting Sanchez under different factual theories. But no such protection is necessary when the prosecutor in "argument elect[s] what conduct by defendant amount[s] to the crime charged." (*Id.* at p. 1455.)

Here, the prosecution made an election, so no unanimity instruction was required, and the instructions were proper. Indeed, the closing arguments of both the prosecution and the defense left no room for doubt that the focus of count one was Sanchez's punching and kicking T.E., whereas the focus of count two was his pushing or throwing her down the stairs. In closing argument, the prosecutor said of count one "that's the act. The kicking, the punching," and said of count two "after Count 1, after kicking her, after punching her, at some point they got up, and he lifted her up, and he threw her down the stairs." Defense counsel reiterated the distinction in the same terms. "Count 1 we have the initial kicking and the punching, and Count 2 is pushing down the stairs."

In addition, the inclusion of a self-defense element only as to count two, and the argument about that element, further made clear which acts related to which counts. The prosecution argued the self-defense claim applied only to count two because T.E. testified that she showed Sanchez the knife *after* the punching and kicking incident. Defense counsel agreed, arguing that on "the allegation of kicking and punching, we're not claiming self-defense. But the allegation of pushing down the stairs, we are claiming self-defense." (See *People v. Brugman* (2021) 62 Cal.App.5th 608, 629 ["[T]he prosecutor's election could not have been more clear. She twice informed the jury, in simple language, that count 5 was based on the incident in which Brugman held a gun to C.'s head and said he would 'smoke' her. Consistently, the only evidence the prosecutor discussed in arguing that the elements of that count were established was the evidence relating to that same incident"].) Since the prosecution made an election that was so clearly presented,

we conclude the instructions to the jury were full and complete and complied with the either/or rule.

Sanchez argues the jury's request that the court "specify the 2 counts" and indicate whether "specific evidence pertain[ed] to one charge vs. the other" shows they were confused about the election. Assuming the jury was asking the court to clarify the election (rather than direct them to evidence relevant to each act, which would not have been appropriate) we conclude the trial court did not abuse its discretion in determining that no such clarification was necessary. The trial court stated: "So after discussing whether we should clarify that one charge was kicking and punching versus the second charge related to the stairwell incident, we contemplated basically being that specific. But after further discussion and also communication with [trial counsel by phone], the Court's view is that it was pretty clear during closing arguments that Count 1 was pertaining to the kicking and punching, and Count 2 was pertaining to the stairwell incident. [¶] Because it was pretty clear at this point, the Court is suggesting just language that says Counts 1 and 2 pertain to two different acts. And then see what other questions they come up with." In short, the trial court—and the parties—concluded the election was so clear in specifying the two acts forming the basis of the two counts that no clarification was required. However, the trial court answered in a way that specifed Sanchez could not be convicted on both counts for the same act. We conclude this decision by the trial court was well supported and it was not an abuse of discretion to decline to offer further clarification of the election.

For the same reason, we conclude Sanchez's trial counsel did not perform in an objectively unreasonable fashion by agreeing to that response. The instructions as given were compliant with the law because the prosecution made such a clearly demarcated distinction between the acts. The court was not required to reiterate the election and, because the election was so clear, reiterating it was unnecessary. Trial counsel did not perform deficiently by either suggesting or agreeing to a response that was so reasonable under the facts of the case.

Sanchez's reliance on *People v. Loza* (2012) 207 Cal.App.4th 332 is misplaced. In that case, a husband and wife were tried together for murder. (*Id.* at pp. 337-340.) The trial court instructed the jury with a standard instruction that an aider and abettor was "equally guilty" as the perpetrator. The jury sought clarification about whether an aider and abettor could have a less culpable state of mind, yet the court simply referred the jury to the instructions. (*Ibid.*) The Court of Appeal held that the wife's attorney was ineffective in failing to object to the "equally guilty" language in the instruction and in failing to object to the court's response to the jury instruction. (*Id.* at pp. 349-350, 355-356.) The instruction was misleading because an aider and abettor can be guilty of a greater or lesser crime than a perpetrator, and there was evidence from which the jury could have concluded the wife and husband had different mental states. (*Id.* at pp. 350, 354-355.) So defense counsel was ineffective in failing to seek a modification of the instruction and in failing to object to the response to the jury's inquiry. (*Id.* at p. 355.)

13

The difference from the facts of this case is stark. Here, Sanchez has identified no error in the jury instructions, the prosecution's election of which acts related to the two counts was unambiguous and reiterated by defense counsel during argument, and the response to the jury's inquiry did not direct the jury to an erroneous or confusing instruction. We see no basis in *Loza* for concluding the trial court abused its discretion by deciding not to expressly include the prosecution's election in its instructions to the jury or that trial counsel performed deficiently by proposing or acquiescing to the response.

Even if trial counsel could be found ineffective for agreeing to a reasonable and legally sufficient response to a jury inquiry, Sanchez has not established his trial counsel had no tactical purpose. Sanchez and the People dispute whether counsel reasonably could have agreed to the response in the hopes that it would lead the jury to decide the prosecution had overcharged Sanchez and refuse to convict on two counts. We think a more obvious strategy was in play—counsel understood the distinction was so clear that reiterating it was not important, but thought there was some risk the jury would think it could convict Sanchez on both counts based on only one of the two acts. The court stated that the parties agreed not to clarify the acts because "it was pretty clear during closing arguments" and agreed to limit the answer to informing them that the two counts pertain to two different acts. Pressing to clarify that the jury could not convict Sanchez on two counts of assault based on only one of the two identified acts is a conceivable strategy, which on direct appeal is enough to defeat a claim of ineffective assistance of counsel. (*People v. Kraft*, *supra*, 23 Cal.4th at p. 1069.)

We also conclude for similar reasons that Sanchez did not show prejudice. It is not reasonably probable he would have obtained a more favorable result but for his trial counsel's failure to request a clarifying statement from the court to support the prosecution's election. His argument turns on speculation that the jury ignored the election and found him guilty of one count of assault for punching T.E. and a second count of assault for kicking her. We conclude the attorneys in the case were too precise in specifying that the punching and kicking were a single act related to count one for it to be reasonably probable the jury could so misunderstand or would misapply what it had been told. (*Brown*, *supra*, 11 Cal.App.5th at p. 341 ["there is an implicit presumption that the jury will rely on the prosecution's election and, indeed, is bound by it"].)

**III**

**DISPOSITION**

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
J.

We concur:

CODRINGTON_____
Acting P. J.

FIELDS_____
J.

15