Filed 12/3/25  P. v. Sandoval CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ADEMIR ADALY SANDOVAL,<br><br>    Defendant and Appellant. | B339267<br><br>(Los Angeles County<br>Super. Ct. No.<br>XCNBA515433) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed.

G. Martin Velez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Attorney General, and Marc A. Kohm, Deputy Attorney General, for Plaintiff and Respondent.

In November 2022, defendant and appellant Ademir Sandoval repeatedly went to the home where his romantic partner and her relatives lived.  He threatened residents, vandalized their vehicles, and used gardening shears to attack one resident.  A jury found Sandoval guilty of stalking, criminal threats, two counts of vandalism, and assault with a deadly weapon.

On appeal, Sandoval argues: (1) there was insufficient evidence for criminal threats and one count of vandalism; (2) the trial court prejudicially erred by not instructing the jury on unanimity for criminal threats against two victims; and (3) the trial court prejudicially erred by not giving a self-defense instruction on the charge of assault with a deadly weapon.  We reject each argument and affirm the judgment.

## BACKGROUND

In or around October 2022, Sandoval lived with his romantic partner, Griselda A.  After they were evicted Griselda A. moved into a duplex where several of her relatives lived.  Griselda A.'s relatives did not invite Sandoval to live with them.

On November 11, 2022, Sandoval entered the family's residence without permission.  Griselda A.'s mother, her sister Ana A., and two of Ana A.'s children were home at the time.  Ana A. testified that Sandoval screamed, "Where the fuck is" Griselda?  Ana A. told him to get out.  Sandoval said, "I'm going to come and get all you motherfuckers."  Ana A. also testified that Sandoval used the word "kill" several times before he left.

Ana A.'s husband, Alexander L., testified at trial that he saw Sandoval outside the family's duplex in the morning on November 12.  Sandoval was running away from Alexander L.'s car, parked across the street.  Alexander L. walked to his car and

found someone had cut the valve on one of its tires.  The tire was still leaking air when he arrived.

Gladys C., another relative who lived at the duplex, testified she saw Sandoval ducking near her car in the evening on November 12.  She approached Sandoval, who stood up and ran away.  Gladys C. found her car's rear tires had been slashed.

On November 14, the family installed security cameras around their home.  Alexander L. testified that, while watching the cameras' live video that evening, he saw Sandoval's car enter a nearby parking lot.  Sandoval walked toward Alexander L.'s car.  Alexander L. hurried outside and found one of his tires slashed again.  He then saw Sandoval across the street near Gladys C.'s vehicle.

Alexander L. ran across the street to confront Sandoval.  He testified he found Sandoval crouching, holding gardening shears.  Alexander L. asked Sandoval, "What the fuck are you doing?"  Sandoval stood up and swung the shears at Alexander L. several times.  Sandoval hit Alexander L. above one of his eyes, causing him to bleed profusely.  Sandoval then went to his car and drove away.

On November 17, 2022, Sandoval returned to the family's duplex again.  Multiple witnesses testified that Sandoval smashed parts of Alexander L.'s car with a baseball bat.

The prosecution charged Sandoval with five counts: (1) stalking, (2) criminal threats, (3) vandalism of Alexander L.'s car on November 12, 2022, (4) assault with a deadly weapon, and (5) vandalism of Alexander L.'s car on November 17, 2022.  After trial, the jury found Sandoval guilty on all five counts.  He was sentenced to nine years and four months in state prison.  Sandoval timely appealed.

## DISCUSSION

### 1. Sufficiency of Evidence

Sandoval argues the trial court erred in denying his motions for acquittal (Pen. Code, § 1118.1) on the criminal threats charge and the third count for vandalism.  On appeal, we independently review " ' "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." ' " (*People v. Stevens* (2007) 41 Cal.4th 182, 200.)  "[W]e assess whether the evidence is inherently credible and of solid value" and "view the evidence in the light most favorable to the jury verdict and presume the existence of every fact that the jury could reasonably have deduced from that evidence." (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 488.) "The defendant bears an enormous burden" when challenging the sufficiency of the evidence.  (*People v. Aguilar* (2019) 41 Cal.App.5th 1023, 1026.)

#### A. Criminal Threats

Sufficient evidence supports Sandoval's conviction for criminal threats.  (Pen. Code, § 422.)  This crime's elements are: (1) the defendant willfully threatened to commit a crime which will result in death or great bodily injury to another person, (2) the defendant made the threat with the specific intent that the statement is to be taken as a threat, even if there is no intent of actually carrying it out, (3) the threat was on its face and under the circumstances in which it was made so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, (4) the threat actually caused the person

4

threatened to be in sustained fear for his or her own safety or for his or her immediate family's safety, and (5) the threatened person's fear was reasonable under the circumstances. (*In re George T.* (2004) 33 Cal.4th 620, 630.)

Sandoval contends there was insufficient evidence for the third element. A threat's " ' "unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances." ' " (*In re George T., supra,* 33 Cal.4th at p. 635.) These " 'four qualities are . . . the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim.' " (*Ibid.*) "When the [defendant's] words are vague, context takes on added significance, but care must be taken not to diminish the requirements that the communicator have the specific intent to convey a threat and that the threat be of such a nature as to convey a gravity of purpose and immediate prospect of the threat's execution." (*Id.* at p. 637.)

The prosecution presented substantial evidence for this element. It is true that Sandoval's statement, "I'm going to come and get all you," was ambiguous. But Ana A. also testified that Sandoval used the word "kill" several times, though she did not recount his exact words. She specifically recalled telling the police that Sandoval said, "I'm going to kill all you motherfuckers." These threats were unconditional.

The surrounding circumstances further support the jury's findings. Sandoval entered the family's home without permission while Ana A. was in the bathroom. She heard her children scream. When she confronted Sandoval, she told him to leave before she called the police. He replied, "I don't give a fuck."

5

The evidence of Sandoval's words and their context constitute substantial evidence that his threat was, "on its face and under the circumstances . . . so unequivocal, unconditional, immediate, and specific as to convey to" the victims "a gravity of purpose and an immediate prospect of execution of the threat." (Pen. Code, § 422, subd. (a).)

Sandoval's reliance on *In re Ricky T.* (2001) 87 Cal.App.4th 1132 is misplaced. In that case, a high school student "pounded on" a locked classroom door. (*Id.* at p. 1135.) A teacher opened the door and accidentally hit the student with it. (*Ibid.*) The student "became angry, cursed [the teacher] and threatened him, saying, 'I'm going to get you' " (*ibid.*) or " 'I'm going to kick your ass' " (*id.* at p. 1136). He made those statements "in response to his accident with the door." (*Id.* at p. 1138.)

Here, Sandoval's threat was not an immediate, impulsive response to an accident or injury. Sandoval started the confrontation by entering Ana A.'s home without permission. Sandoval remained there for about "four or five minutes." He said he did not care if Ana A. called the police. In these circumstances, Sandoval's conduct was highly threatening.

Moreover, the court in *In re Ricky T.* noted the absence of "evidence of any circumstances occurring *after* appellant's 'threats' which would" support this element of criminal threats. (87 Cal.App.4th at p. 1139.) Here, by contrast, the jury heard evidence of later events supporting its finding that Sandoval's statements were sufficiently unequivocal, unconditional, immediate, and specific. Sandoval partially carried out his threat three days later when he attacked Ana A.'s husband with gardening shears.

Sandoval also argues the prosecution presented insufficient evidence on the element of sustained fear. "Sustained fear must occur over 'a period of time that extends beyond what is momentary, fleeting, or transitory.' [Citation.] Courts have held, for instance, 15 minutes satisfies the sustained fear requirement." (*People v. Roles* (2020) 44 Cal.App.5th 935, 942.)

The jury heard substantial testimony supporting this element. After the encounter with Sandoval, Ana A. was scared and did not want to leave home until her husband returned hours later. When asked "how long" she was scared, Ana A. answered, "I'm scared to this day." She further testified that her daughter, B.A., cried "the whole day." This testimony reflected more than momentary or fleeting fear. The trial court did not err in denying Sandoval's motion for judgment of acquittal on the criminal threats offense.

**B. Vandalism**

Sandoval argues there was insufficient evidence for his conviction on count three for vandalism (Pen. Code, § 594, subd. (a)) of Alexander L.'s car on November 12, 2022.[1] Sandoval relies on the lack of direct evidence. No witness observed him damage the car's tire. Alexander L. saw Sandoval near his car but did not see Sandoval holding any tool capable of damaging the tire valve.

The prosecution, however, presented strong circumstantial evidence against Sandoval. " 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the

---

[1] Sandoval does not appeal his conviction on count five for vandalism of Alexander L.'s car on November 17, 2022.

7

appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt.' " (*People v. Jones* (2013) 57 Cal.4th 899, 960–961.) " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Abilez* (2007) 41 Cal.4th 472, 504.)

Alexander L. testified he saw Sandoval run away from his car. He then found one of his tires rapidly leaking air. The jury also heard evidence about Sandoval vandalizing the family's cars on three other occasions. This circumstantial evidence reasonably justifies the jury's finding that Sandoval also vandalized Alexander L.'s car on November 12, 2022. The trial court did not err in denying Sandoval's motion for judgment of acquittal on vandalism, count three.

## 2. Unanimity Instruction

Sandoval contends the trial court erred by not instructing the jury on unanimity (e.g., CALCRIM No. 3500) regarding criminal threats. "[T]he jury must agree unanimously the defendant is guilty of a *specific* crime." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "[W]hen the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Ibid.*) "Where no election is made, the court has a duty to instruct sua sponte on the unanimity requirement." (*People v. Curry* (2007) 158 Cal.App.4th 766, 783.)

Typically, a unanimity instruction is required when separate acts may constitute different violations of the same criminal statute charged in a single count. (See, e.g., *People v. Davis* (2005) 36 Cal.4th 510, 561 [robbery with "two distinct

8

takings"]; *People v. Riel* (2000) 22 Cal.4th 1153, 1199 ["two distinct acts of robbery"]; *People v. Diedrich* (1982) 31 Cal.3d 263, 280 ["two distinct violations of" bribery statute charged in single count].)  Here, rather than separate criminal events, the same criminal threats may have constituted discrete crimes against each of two victims: one against Ana A. and one against her daughter B.A.

The parties have identified only one case addressing a unanimity instruction where identical acts could constitute discrete crimes against two victims.  In *People v. Carrera* (1989) 49 Cal.3d 291, 311, the prosecution charged the defendant "with one count of robbery of two victims."  No unanimity instruction was required because both victims "were the joint custodians of the" money taken, "and the funds were taken from the immediate presence of both of them by force or violence as to both."  (*Ibid.*)

This case differs from *People v. Carrera* because, unlike most crimes, a criminal threats charge includes an element personal to the victims: their subjective experience of sustained fear.  (See *People v. Roles, supra,* 44 Cal.App.5th at p. 942 ["sustained fear must be objectively and subjectively reasonable"]; *In re Ricky T., supra,* 87 Cal.App.4th at p. 1140 ["A victim must actually be in sustained fear, and the sustained fear must also be reasonable under the circumstances"].)  The criminal threats charge against Sandoval arose from the same statements made simultaneously to Ana A. and B.A.  Elements one through three were identical for both victims.  Sandoval argues the prosecution charged two discrete crimes based on the elements of sustained fear and objectively reasonable fear.  Because those elements were personal to each victim, the

9

evidence suggested more than one discrete crime. Nevertheless, a unanimity instruction was unnecessary for two reasons.

First, rather than failing to elect between two crimes in a way that could result in conviction without unanimous agreement on the specific crime, the prosecution elected that it had to prove *both* crimes to sustain any conviction. We reach this conclusion by reviewing the prosecution's closing argument. (See *People v. Brown* (2017) 11 Cal.App.5th 332, 341 [the prosecution may elect between discrete crimes in opening statement and/or closing argument]; *People v. Jantz* (2006) 137 Cal.App.4th 1283, 1292 [same].)

During closing argument on this count, the prosecution initially stated it must prove Sandoval threatened to harm "Ana [A.] or B[.]A." But as discussed above, this first element concerned identical conduct (Sandoval's statements) directed to both victims. The only elements that could suggest more than one discrete crime were each victim's sustained fear and reasonable fear. For those elements, the prosecutor exclusively used the conjunction "and" to refer to both victims and used the plural pronouns "they" or "them." The prosecutor argued, "I need to prove to you that the threat actually caused Ana *and* B[.A.] to be in sustained fear." She further argued, "Ana *and* B[.A.] never had that fear really go away." "When did *they* have time to get rid of that fear? In fact, that fear stayed in *them* for so long that *they* had to move to Covina." On the final element, the prosecutor argued, "I need to next prove to you that Ana *and* B[.A.]'s fear was reasonable under the circumstances." She concluded, "Under [the] circumstances, Ana *and* B[.A.] were reasonably afraid."

The prosecutor thus used "and," "they," and "them" to refer to both victims on the only elements that could suggest more than one discrete crime. Via this argument, the prosecution informed the jury of its election that convicting Sandoval on this count required all jurors to unanimously agree he committed the crime against both Ana A. and B.A.

Second, a unanimity instruction was unnecessary because Sandoval offered the same defense to both crimes, and the jury necessarily rejected it as to both. A unanimity instruction "is not required if 'the defendant offered the same defense to both acts constituting the charged crime, so no juror could have believed defendant committed one act but disbelieved that he committed the other, or because " ' "there was no evidence from which the jury could have found defendant was guilty of" the crime based on one act but not the other.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 879; accord *People v. Jennings* (2010) 50 Cal.4th 616, 679.) Where a juror could have reasonable doubt about the latter of two crimes charged in a single count, no unanimity instruction is required if any juror who found defendant committed the latter crime also necessarily found defendant committed the former crime. (*People v. Riel, supra,* 22 Cal.4th at p. 1200 ["It was conceivable that some, or even all, of the jurors might have had a reasonable doubt that" a second robbery occurred, but it was "inconceivable that a juror would believe … that defendant committed" the second robbery "but somehow find he did not commit" the first robbery].)

Sandoval offered the same defense to criminal threats against both victims. He argued the prosecution had only proven conduct (as recorded on video) that did not rise to the level of criminal threats, and Ana A.'s testimony about other threatening

11

conduct and about the victims' fear was not credible. No juror could have rejected Sandoval's defense with respect to one victim and accepted it as to the other victim because no witness other than Ana A. testified about this offense. She testified three others were home when Sandoval made the threats: two of her children (including B.A.) and her mother. They did not testify. Ana A. testified both about Sandoval's conduct and the fear she and B.A. felt. To find Sandoval guilty of criminal threats, the jury necessarily credited Ana A.'s testimony on all elements.

## 3. Self-Defense Instruction

Finally, Sandoval argues the trial court erred by not instructing the jury on self-defense as to the charge of assault with a deadly weapon. "[T]he trial court has a sua sponte duty to instruct on defenses that the defendant is relying on or that are supported by substantial evidence and are not inconsistent with the defendant's theory of the case." (*People v. Cottone* (2013) 57 Cal.4th 269, 293.) "In determining whether the evidence is sufficient to warrant a jury instruction" on an affirmative defense, "the trial court does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt.' " (*People v. Salas* (2006) 37 Cal.4th 967, 982.)

The trial court did not err because no substantial evidence supported this affirmative defense. "Self-defense is limited to the use of force that was reasonably necessary to defend against the danger or repel the attack." (*People v. Temple* (2025) 110 Cal.App.5th 1281, 1295.) The law limits "the amount of retaliatory force which may be used against an assault with fists. Such an assault does not justify the use of a deadly weapon in self-defense." (*People v. Enriquez* (1977) 19 Cal.3d 221, 228,

12

disapproved on other grounds by *People v. Cromer* (2001) 24 Cal.4th 889, 901, fn. 3.)

Even if Alexander L. had been the aggressor and Sandoval used force only in self-defense, Sandoval plainly used an unreasonable amount of force. Alexander L. was unarmed. No evidence suggested he was likely to inflict great bodily injury on Sandoval. Sandoval fought Alexander L. using sharp gardening shears or scissors. Sandoval used disproportionate force.

Sandoval relies on Gladys C.'s testimony that she did not see any weapon in Sandoval's hands during his altercation with Alexander L. That one witness — watching the incident from across the street — did not see Sandoval use a weapon does not contradict the overwhelming evidence that Sandoval did so.

Alexander L. testified about Sandoval's weapon in detail. He was "right in front of" Sandoval and saw him holding gardening shears. Alexander L. thoroughly described how Sandoval used the shears as a weapon He also authenticated a video of himself being wheeled into an ambulance and pointing to a firefighter holding gardening shears with red handles. Moreover, police officer Matthew Munoz testified he responded to the scene and recovered the gardening shears there. We also note that Sandoval's appeal does not contest the sufficiency of evidence for the charge of assault with a deadly weapon.

Assuming the trial court should have instructed the jury on self-defense, any error was harmless. For such an error, we must reverse the judgment " 'only if, "after an examination of the entire cause, including the evidence" [citation], it appears "reasonably probable" the defendant would have obtained a more favorable outcome had the error not occurred.' " (*People v. Blakeley* (2000) 23 Cal.4th 82, 93.)

It is not reasonably probable that a self-defense instruction would have resulted in a more favorable outcome for Sandoval. The jury heard copious evidence showing Sandoval struck an unarmed person with gardening shears, a deadly weapon. The jury heard no evidence suggesting Alexander L. posed a great danger to Sandoval. Because self-defense requires using no more force than reasonably necessary, it is not probable that the jury would have reasonable doubt based on this affirmative defense.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TAMZARIAN, J.

We concur:


COLLINS, Acting P. J.


VAN ROOYEN, J.*

---

\* Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.